LYNNE C. HERMLE (STATE BAR NO. 99779)
lchermle@orrick.com
JESSICA R. PERRY (STATE BAR NO. 209321)
jperry@orrick.com
MEGAN M. LAWSON (STATE BAR NO. 294397)
megan.lawson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     650 614 7400
Facsimile:      650 614 7401

Attorneys for Defendant
CLARK CONSTRUCTION GROUP-CALIFORNIA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE HALEY, as an individual,<br><br>         Plaintiff,<br><br>    v.<br><br>CLARK CONSTRUCTION GROUP-CALIFORNIA, INC., a corporation; DOES 1-100,<br><br>         Defendants. | Case No. 4:18-cv-07542-HSG<br><br>**DECLARATION OF MARK A. KALISH, M.D. IN SUPPPORT OF DEFENDANT CLARK CONSTRUCTION GROUP-CALIFORNIA, INC.'S MOTION TO COMPEL INDEPENDENT MENTAL EXAMINATION**<br><br>Date:  December 5, 2019<br>Time:  2:00 p.m.<br>Dept:  Courtroom 2, 4th Fl.<br>Judge: Hon. Haywood S. Gilliam, Jr. |

I, Mark A. Kalish, M.D., hereby declare:

1. I am a medical doctor, licensed to practice in the State of California, and specializing by training and practice in the field of psychiatry. I make this declaration in support of the motion by Defendant Clark Construction Group-California, Inc. ("Clark") to Compel an Independent Mental Examination of Plaintiff Lawrence Haley. I have personal knowledge of the matters contained in this declaration and, if called to testify as a witness to those matters, could do so competently.

2. I received a Bachelor of Science degree in Biology from the University of Michigan in 1972, where I graduated Phi Beta Kappa. I received a Master's degree in Public Health from the University of Michigan in 1977 and a Medical Degree from Northwestern University Medical School in 1977. I completed an internship at Loma Linda University Medical School Department of Psychiatry in Loma Linda, California, in 1978, and then completed my psychiatric residency at the University of California, San Diego Department of Psychiatry from July 1979 through July 1982.

3. I am board certified by the American Board of Psychiatry and Neurology in Psychiatry, by the American Board of Forensic Psychiatry in Forensic Psychiatry. I was designated a Distinguished Fellow with the American Psychiatric Association in 2003. I served as Examiner for the American Board of Psychiatry & Neurology from 1990 to 1996, in 1998, and in 2000 and for the American Board of Forensic Psychiatry from 1990 to 1991. I served as a Clinical Instructor, Department of Psychiatry, at the University of California, San Diego from 1983 to 1989 and in a voluntary position as Assistant Clinical Professor, Department of Psychiatry, at the University of California, San Diego from 1989 to June 2019.

4. I have performed psychiatric evaluations for more than 35 years. Until my retirement in March 2016, I had an office practice treating the full spectrum of patients with psychiatric disorders, including anxiety, depression, manic depressive or bipolar illness, schizophrenia, and post-traumatic stress disorder. I have been retained as an expert witness in civil litigation in dozens of cases, both for the plaintiff and for the defendant. I have testified as an expert witness at trial dozens of times. Attached hereto as Exhibit A is a true and correct copy of

my curriculum vitae.

5. I have been retained by Clark and its counsel, Orrick, Herrington & Sutcliffe LLP, to conduct a mental examination of Plaintiff Lawrence Haley.

6. It is my understanding that Mr. Haley alleges severe emotional distress as a result of Clark's alleged conduct toward him, and that he sought counselling by multiple psychologists or medical treaters.

7. I believe that an independent mental examination in this case would help determine the following: (1) the scope and severity of Mr. Haley's suffering; (2) the cause of Mr. Haley's emotional and physical suffering; (3) whether Mr. Haley's suffering is the result of alternative stressors other than Clark's alleged conduct; and (4) the accuracy of Mr. Haley's diagnoses and the results of any treatments, if any. This is a basic, but not an exhaustive, list.

8. The examination should include a psychiatric interview between Mr. Haley and myself, as well as psychological testing, which may include the Minnesota Multiphasic Personality Inventory 2 (the "MMPI-2"). The MMPI-2 is a widely used psychological test. It can be used to reach a consistent, comprehensive picture of an individual's emotional and personality functioning.

9. Assessment of Mr. Haley will involve an inquiry into Mr. Haley's current mental status, cognitive and emotional functioning, the work experiences that he alleges contributed to complaints of emotional distress, any medical or psychological treatment for symptoms from the alleged distress, his experiences between the end of his work at the Clark job site to the time of the evaluation to assess the stress factors contributory to continuing stress symptoms, and his past personal history involving his family, significant developmental experiences, educational and occupational history, dating and marital history, litigation history, financial history, and past medical and psychiatric history. A significant portion of a psychiatric diagnosis is based on history. <u>All these areas of inquiry are standard practice for an analysis and diagnosis.</u> Because there is no simple test to pinpoint the causes and stress factors contributing to most psychiatric injuries, I must rely upon an inquiry into all possible avenues of stress and distress. Any limit on the inquiries necessarily results in an incomplete and potentially erroneous assessment.

10. In addition, it is critical that I corroborate, where possible, Mr. Haley's self-reported history with other sources such as medical records and documents, to increase the accuracy of my diagnosis and medical-legal opinions and conclusions. To that end, I will review Mr. Haley's deposition testimony, and any other documents produced to Clark regarding Mr. Haley's medical and psychiatric history and the claims he alleges in this matter. The records are not duplicative of the material covered in the examination, but rather serve as a point of corroboration and comparison.

11. The total length of the interview and psychological testing will be up to five hours, excluding breaks, and assuming a good faith effort by Mr. Haley. During this time, no one else will be present in the examination room other myself and Mr. Haley. In my experience, having other individuals present during the examination disrupts the examination process and interferes with my ability to obtain complete and accurate responses from Mr. Haley.

12. The five hours of examination are adequate to ensure the accuracy of my psychiatric diagnosis and the correctness of my medical-legal opinions and conclusions. The five-hour period allows sufficient time for me to ask follow up questions from earlier interview discussions. It also allows Mr. Haley to supplement or correct any information he provided during the beginning of the examination. Frequently, unconscious processes are stimulated in the initial part of the interview, which allow an examinee to remember history that he could not otherwise have provided. Examinees are more often able to reveal intimate details in the latter part of the interview, after we have developed a rapport. These details may be important to a comprehensive and accurate psychiatric diagnosis.

13. Per my usual practice, I will audio record the examination. I routinely audio record my examinations because it provides a complete record of the examinee's answers. A transcript of the audio recording may also be prepared and may assist in the preparation of my report. I will rely on the recording while analyzing the examinee's responses and drawing conclusions. During the examination, I focus on the examinee's answers, rather than on note-taking. Therefore, the audio recording assists where my memory or notes of the examination fail. Accordingly, the audio recording is essential to my diagnostic work. Mr. Haley is welcome to bring his own

1  recording device to audio record the examination.

2      I declare under penalty of perjury under the laws of the United States of America that the
3  foregoing is true and correct and that this declaration is executed on July 18, 2019.

                                                                *[signature]*
                                                                Mark A. Kalish, M.D.

# EXHIBIT A

CURRICULUM VITAE

OF

**MARK A. KALISH, M.D.**

**BIOGRAPHICAL DATA**

Date of Birth:  November 1, 1951

Place of Birth: Chicago, Illinois

Marital Status: Married

**MAILING ADDRESS**

5052 Clairemont Dr. #17806
San Diego, California 92117
         (619) 282-7172
Fax:    (619) 282-7626
Email: Mark@MarkKalish.com

**EDUCATION**

B.S., The University of Michigan; Ann Arbor, Michigan; Major - Biology
August, 1972

M.P.H., The University of Michigan; Ann Arbor, Michigan; Major - Medical Care Organization;
December, 1977

M.D., Northwestern University Medical School; Chicago, Illinois; December, 1977

Internship: Loma Linda University Medical School; Loma Linda, California;
Department of Psychiatry; January - December, 1978
Training Director: Louis P. Bozzetti, M.D.

Residency: The University of California, San Diego
Department of Psychiatry, M-300, La Jolla, California 92037 July, 1979 - July, 1982
Training Director: Robert Nemiroff, M.D.

## MEDICAL LICENSE

California Physician & Surgeon License, G 38634, January 2, 1979

## BOARD CERTIFICATION

Diplomate, Board of Medical Examiners, 1979

Diplomate in Psychiatry, American Board of Psychiatry and Neurology, 1986

Diplomate in Forensic Psychiatry, American Board of Forensic Psychiatry, 1989

Diplomate in the Subspecialty of Forensic Psychiatry, American Board of Psychiatry and Neurology, October, 1994 - October, 2004

Recertification in Forensic Psychiatry, American Board of Psychiatry and Neurology, 2003 - 2013

Examiner, American Board of Forensic Psychiatry, 1990 - 1991

Examiner, American Board of Psychiatry & Neurology, 1990 – 1996, 1998, 2000

Fellow, American Psychiatric Association, 2001

Distinguished Fellow, American Psychiatric Association, 2003

## ACADEMIC POSITIONS

Assistant Clinical Professor, voluntary; Department of Psychiatry, The University of California, San Diego; 1989 to 2019

Clinical Instructor, voluntary; Department of Psychiatry, The University of California, San Diego; 1983 to 1989

## PROFESSIONAL EXPERIENCE

Psychiatric Consultant to the Military Entrance Processing Station, 1997 - present

Medical Consultant, California State Department of Corporations, 1997 - 2001

Medical Expert Reviewer, Medical Board of California, 1995 - present

Medical Expert Panel, California State Bar Court, 1995 - 1997

Staff Psychiatrist, Richard J. Donovan Correctional Facility, San Diego, California July, 1987 to June, 1988

Staff Psychiatrist, Metropolitan Correctional Center, San Diego, California; June, 1984 to October, 1985; October, 1987 to November, 1988

Psychiatric Consultant; California State Department of Rehabilitation, 1350 Front Street, San Diego, California 92101; July, 1982 to January, 1984

Consultant; CRASH Golden Hills Residential Treatment Facility,
2410 "E" Street, San Diego, California 92102; January, 1980 to May, 1989

Medical Director, CRASH Short Term Residential Drug Treatment Program,
July, 1980 to July, 1981

Emergency Room Physician, Jerry L. Pettis Memorial Veterans Administration Medical Center, Loma Linda, California; January, 1979 to July, 1979

## MEDICAL STAFF POSITIONS

Treasurer, Vista Hill Medical Staff, 1985

Secretary, Vista Hill Medical Staff, 1986

Chairman, Pharmacy & Therapeutics Committee, Vista Hill Hospital, 1985, 1986

Member, Pharmacy & Therapeutics Committee, Mercy Hospital, 1985 to 2001

Chairman, Ad Hoc Committee on Sedative-Hypnotics, P & T, Mercy Hospital, 1985

Member, Library Committee, Mercy Hospital, 1985 to 1993

Chairman, Committee on Psychiatry & the Law, San Diego Society of Psychiatric Physicians, 1987 to 1990

Member, Peer Review Committee, San Diego Society of Psychiatric Physicians, 1991 to 1998

Chairman, Peer Review Committee, San Diego Society of Psychiatric Physicians, 1992 to 1994

## PROFESSIONAL ORGANIZATIONS

Phi Beta Kappa, 1972

American Public Health Association, 1977-1990

San Diego Psychiatric Society, 1981-2005

American Psychiatric Association, 1981 -2005

California Psychiatric Association, 1981-2005

San Diego Medical Society, 1981-2005

American Medical Association, 1981-2005

California Medical Association, 1981 -2005

American Academy of Psychiatry and the Law, 1986 to 2005

## COMMUNITY ORGANIZATIONS

Board of Directors, Friends of Mercy,
1989 to 1994

Secretary Treasurer, Friends of Mercy, 1990

Vice President, Friends of Mercy, 1991

President, Friends of Mercy, 1992

Board of Directors, Mercy Physicians Medical Group,
1989 to 1991

Board of Directors, International Aerospace Hall of Fame, San Diego, California,
1985 to 1991

Board of Directors, The Monarch School Project 2015 - 2018